**JacksonLewis**

**Jackson Lewis P.C.**
58 South Service Road, Suite 250
Melville NY  11747
(631) 247-0404 Direct
(631) 247-0417 Fax
jacksonlewis.com

MY DIRECT DIAL IS: (631) 247-4612
My Email Address is: Kathryn.Barry@jacksonlewis.com

July 28, 2023

**VIA ECF**
Hon. Gary R. Brown
United States District Judge for the
Eastern District of New York
100 Federal Plaza, Courtroom 840
Central Islip, NY  11722

       Re: *Leatha Adams v. Quality King Distributors, Inc.*
          Docket No.: 23-cv-01145 (GRB)(ST)

Dear Judge Brown:

  As counsel for Quality King Distributors, Inc. ("QKD" or the "Company"), we write to request leave to move to dismiss Plaintiff's Amended Complaint (Docket Entry 15) ("AC ¶__").  For the reasons set forth more fully herein, Plaintiff has not stated a claim for negligent retention or identity theft.  The Amended Complaint should be dismissed, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

  To bring a claim for negligent retention, Plaintiff must allege that QKD had actual or constructive knowledge of Jose Bonilla's "propensity for the sort of behavior which caused [Plaintiff's] harm" and that QKD "knew or should have known that it had the ability to control [Mr. Bonilla] and of the necessity and opportunity for exercising such control".  *Moore Charitable Found. v. PJT Partners, Inc.*, 2023 N.Y. LEXIS 910, 2023 WL 3956576, at *9-10 (N.Y. June 13, 2023).[1]  She has not.  Plaintiff alleges that Mr. Bonilla, a former QKD employee, improperly used her social security number (SSN) to obtain employment with QKD, that the Social Security Administration (SSA) "notifies employers if they send in reports containing one or more mismatches," and that despite this "notice," QKD did not verify Mr. Bonilla's SSN, request he provide additional documents regarding his SSN, or terminate his employment.  (AC ¶¶11, 35-37).  Even if these allegations are true, and they are not, they are insufficient.  Plaintiff cannot rely on the SSA notice to allege that QKD had actual or constructive knowledge of Mr. Bonilla's propensity to engage in identity theft.  Employee Correction Request Notices (also known as a "no-match letters")[2] advise employers that the name or SSN reported on their employee wage report "does not 'match' a name or SSN combination reflected in SSA's records."[3]  As noted in the letter itself, a no-match letter does not imply that an employee is unauthorized to work in the United States or that the SSN provided on the employee's Form W-4 was inaccurate or fraudulent— "there are a number of reasons why reported names

---

[1] Plaintiff must also allege that the tortious conduct occurred on QKD's premises or using QKD's property.  *Id*.   Under the Court of Appeals' recent decision in *Moore Charitable Found.*, she does not need to plead a special relationship or privity.  *Id*. at *17-19.

[2] What Plaintiff refers to as "mismatch" letters.  (AC ¶11).  It should be noted, Plaintiff does not actually allege that QKD received such a letter.  SSA discontinued no-match letters in 2012, before sending letters for the 2011 tax year.  It resumed sending such letters in 2019 and discontinued the practice again in April 2021.  https://secure.ssa.gov/poms.nsf/lnx/0101105027 (last accessed July 28, 2023).  The letters sent between 2019 and 2021 did not include a list of employee names, but rather a request for employers to go online, create an account, and then obtain a list of mismatched records.  *See* n.4, *supra*.

[3] *See* U.S. Department of Justice's "Frequently Asked Questions About Name/Social Security Number 'No-Matches,'" available at https://www.justice.gov/crt/case-document/file/1138466/download (last accessed July 28, 2023).

**JacksonLewis**

Hon. Gary R. Brown
USDC/EDNY
July 28, 2023
Page 2

and [SSNs] may not agree with [SSA's] records."[4]  To that end, the U.S. Department of Justice (DOJ) advises specifically that the "mere receipt of a no-match letter or other no-match notice does not, standing alone, constitute 'constructive knowledge' on the part of an employer that the referenced employee is not work authorized."[5]  As the no-match letter cannot give rise to actual or constructive knowledge, and as Plaintiff has not alleged any other facts to establish such knowledge, the negligent retention claim must be dismissed.

Regardless, even assuming the no-match letter could be used to establish knowledge, and it cannot, QKD could not have controlled Mr. Bonilla's conduct, nor would it have reason to believe that it could.  Employers who receive a no-match letter are not required to reverify an employee's work authorization or investigate whether the SSN provided was fraudulent.  Quite the opposite.  The letter itself advises not to take action against an employee "just because this letter identifies a mismatch".[6]  DOJ guidance makes clear that employers *cannot* "use the no-match letter or other no-match notices by itself as the reason for taking any adverse employment actions against the referenced employee," *including* "subject[ing] the employee to heightened scrutiny."[7]  All employers are advised to do is review their internal records and correct any inaccuracies (e.g., scrivener's errors or misspellings) or, if there are no inaccuracies, to "ask [the employee] to contact their local Social Security office and provide their information for verification."[8]  In other words, QKD was not obligated to take the steps Plaintiff claims it should have, and doing so could have violated the law.  Compliance cannot be negligence.

As for Plaintiff's claim for identity theft, Plaintiff cannot plead such a claim, for the reasons set forth in QKD's request to move to dismiss Plaintiff's Complaint.  (DE 5).  The Second Circuit makes clear that "New York law generally prohibits actual or attempted identity theft . . . [b]ut not all identity theft is actionable under the New York law.  The law authorizes a civil action only if the identity theft 'resulted in the transmission or provision to a consumer reporting agency of information that would otherwise have not been transmitted or provided." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 442 (2d Cir. 2015).  She has not alleged such transmission.  Thus, even assuming she could assert this claim against QKD—and she cannot, as she does not allege QKD engaged in identity theft—she has not stated an actionable claim.

Given the above, we respectfully request permission to move to dismiss Plaintiff's Amended Complaint, and for any further relief that this Court deems just and proper.  We remain available for a conference to discuss.

Respectfully submitted,
JACKSON LEWIS P.C.

*Kathryn J. Barry*

Kathryn J. Barry

cc: All Counsel of Record (*via* ECF).

---

[4] Copies of the 2019 and 2020 letters sent to employers are available on the SSA's website, last accessed on July 28, 2023: https://www.ssa.gov/employer/examplenotice.html.  The letter states that it "does not imply that you or your employee intentionally gave the government wrong information about the employee's name or SSN."
[5] https://www.justice.gov/crt/case-document/file/1138466/download (last accessed July 28, 2023).  *See also Aramark Facility Services v. SEIU, Local 1877*, 530 F.3d 817, 825-26 (9th Cir. 2008) (no-match letter not sufficient to establish constructive knowledge of authorization status).
[6] https://www.ssa.gov/employer/notices/EDCOR%20Letter%20-%20Final%209-16-19508.docx.pdf (last accessed July 28, 2023).
[7] https://www.justice.gov/crt/case-document/file/1138466/download (last accessed July 28, 2023).
[8] https://faq.ssa.gov/en-us/Topic/article/KA-10008 (last accessed July 28, 2023).