# FERGUSON AND ASSOCIATES
305 BROADWAY, SUITE 1100
NEW YORK, NEW YORK 10007
212-219-1001 (TEL)
212-925-8693 (FAX)
fergusndlaw@aol.com

August 31, 2023

VIA ECF
Honorable Gary R. Brown
United States Judge for the
Eastern District of New York
100 Federal Plaza, Courtroom 840
Central Islip, New York 11722

Re: Leatha Adams v. Quality King Distributors Inc.
Docket No.: 23-cv-01145 (GRB) (ST)

Dear Judge Brown:

As the attorney for the Plaintiff, Leatha Adams, I present this letter as a formal response to DE 16, as ordered by the Court in its August 25, 2023, Order. In a letter dated July 28, 2023, (Docket Entry 16) counsel for the Defendant requested leave to dismiss the Plaintiff's amended complaint (Docket Entry 15) upon the grounds that Plaintiff failed to allege that Quality King Distributors, Inc. ("QKD" or the "Company") had actual or constructive knowledge of Jose Bonilla's propensity for the sort of behavior,( identity theft during his 15 years with the QKD) which caused harm to the Plaintiff and that QKD knew or should have known that it had the ability to control Mr. Bonilla and of the necessity and opportunity for exercising such control. Additionally, it is argued by counsel for the Defendant that Plaintiff's claim for identity theft should be also dismissed because under New York law a civil action for identity theft only exists if the identity theft resulted in the transmission or provision to a consumer reporting agency of information that would otherwise have not been transmitted and the Plaintiff failed to allege such a transmission in her amended complaint.

As legal support for her argument, Counsel for the Defendant relies upon the case of *Galper v. JP Morgan Chase Bank, N.A.* 802 F.3d 437 *(2d Cir. 2015)* The Galper case was about identity theft, and it required the Court to consider the relationship between a New York State law providing remedies for victims of identity theft and the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (FCRA). Plaintiff in Galper alleged that she was the victim of an identity theft scheme perpetrated by employees of defendant JP Morgan Chase Bank, N.A. ("Chase"), and therefore sought to hold Chase liable for the identity theft under the New York Fair Credit Reporting Act. The question was whether Galper's lawsuit was preempted by a federal statute. The Court in Galper concluded that the federal statute in question did not preempt all of Galper's claims under the New York law. That viewed in the light most favorable to plaintiff, the operative complaint advanced claims of identity theft and aiding and abetting identity theft based

on Chase's vicarious liability for its employees' theft of Galper's identity. Additionally, the paragraphs of the Galper's complaint setting forth their identity theft claims did not actually mention the concepts of vicarious liability or respondeat superior but could arguably be read to include the theory that Chase is liable for damages (at least in part) because it furnished false information. Contrary to the counsel for the Defendant, the Galper case does stand as a complete bar to holding QKD liability to the Plaintiff under the theories of vicarious liability and/or respondeat superior as pleaded in paragraph #39 in Plaintiff's amended complaint.

## NEGLIGENT RETENTION

When reviewing a motion to dismiss for failure to state a claim, a court must give the complaint a liberal construction, accept the allegations as true, and, providing plaintiffs with the benefit of every favorable inference, examine the adequacy of the pleadings (see Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 38 [2018]; AG Capital Funding Partners, L.P. v State St. Bank & Trust Co., 5 NY3d 582, 591 [2005]; Goshen v Mut. Life Ins. Co., 98 NY2d 314, 326 [2002]). "Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]

The court's role is limited to determining whether the pleading states a cause of action, not whether there is evidentiary support to establish a meritorious cause of action (see Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]; Sokol v Leader, 74 AD3d 1180 [2d Dept 2010]). An employer can be held liable under theories of negligent hiring, retention, and supervision where it is shown that "the employer knew or should have known of the employee's propensity for the conduct which caused the injury" (Kenneth R. v. Roman Catholic Diocese of Brooklyn, 229 A.D.2d 159, 160, 654 N.Y.S.2d 791; see Boyle v. North Salem Cent. Sch. Dist., 208 A.D.3d 744, 172 N.Y.S.3d 621). Causes of action alleging negligence based upon negligent hiring, retention, or supervision are not statutorily required to be pleaded with specificity (see Boyle v. North Salem Cent. Sch. Dist., 208 A.D.3d at 745, 172 N.Y.S.3d 621; Doe v. Enlarged City Sch. Dist. of Middletown, 195 A.D.3d at 596, 144 N.Y.S.3d 639).

In Moore Charitable Found. v PJT Partners, Inc. 2023 NY Slip Op 03185 Decided on June 13, 2023, the New York Court of Appeals reversed the Appellate Division's decision regarding the sufficiency of a cause of action pleaded against an investment bank for its negligent supervision and retention of an employee. The court held that a negligent supervision and retention claim is not limited to actual knowledge. Rather, it also encompasses when the employer should have known of the facts or events evidencing the employee's propensity to commit the wrongful act yet still placed the employee in a position to cause foreseeable harm. That notice is established if a reasonably prudent employer exercising ordinary care under the circumstances would have been aware of the employee's propensity to engage in the injury-causing conduct.

It is the position of the Plaintiff that QKD had both actual and constructive knowledge of the wrongdoing of its former employee, Juan Bonilla. Counsel for the Defendant is correct, the U.S. Department of Justice advises that the mere receipt of a no-match letter or other no-match notices does not, standing alone, constitute "constructive knowledge" on the part of the employer

that the referenced employee is not authorized to work in the United States. In this instance there were multiple instances of no-match letters that were presumably communicated to the employer by the Social Security Administration over a work period of 11 years, thereby placing QKD on notice that something was amiss with the employment of one of its employees. QKD's duty in the context of receiving numerous no-match letters was to act as a prudent and reasonable employer would act under similar circumstances. QKD by their own admissions did nothing during the 11 years Juan Bonilla worked for them while unlawfully using the social security number of the Plaintiff. In their motion to dismiss the amended complaint, counsel for QKD is silent as to what actions it took to either review or verify its internal employment records as to Juan Bonilla. Choosing instead to hide behind their self-serving assertion that to do any verification or due diligence regarding the possible unlawful use of another person's social security number would "subject" them to legal action.

An employer should not avoid liability for negligent supervision and retention by shutting its eyes to the tortious practices and propensities of its employees—that is, by being doubly negligent. An employer "should know" of an employee's dangerous propensity if it has reason to know of the facts or events evidencing that propensity and may be liable if it nonetheless "place[s] the employee in a position to cause foreseeable harm" (see Detone v Bullit Courier Services, 140 AD2d at 2798 and Hall v. Smathers, 240 NY at 486. The notice element for negligent retention or negligent supervision is satisfied if a reasonably prudent employer, exercising ordinary care under the circumstances, would have been aware of the employee's propensity to engage in the injury-causing conduct. Moore Charitable Found. v PJT Partners, Inc. At this juncture, evidence of exactly what QKD knew—and when—is primarily within their sole possession and control and that further and expanded discovery would be dispositive of some of the issues. Additionally, further discovery would clarify what notices, inquiries, and correspondences QKD received from the SSA and the Internal Revenue Service and concurrently QKD's official responses to those notices, inquiries, and Correspondences. Lastly, further discovery would permit counsel for the Plaintiff the opportunity to depose QKD employees in charge of human relations and employee discipline.

Having said the above, counsel for the Plaintiff requests the Court to deny the dismissal of this action together with what further relief that may be appropriate.

Respectfully submitted,

*[signature]*
David R. Ferguson, Esq.

cc: All duly noted counsel of record (Via ECF)